26850.   EATON YALE & TOWNE, INC.
v. STRICKLAND et al.

ARGUED NOVEMBER 8, 1971—DECIDED DECEMBER 1, 1971.

*Gibson, McGee & Blount, Lamar Gibson,* for appellant.
*Larry E. Pedrick, Leon A. Wilson, II, Benjamin Smith, Jr.,* for appellees.

GRICE, Justice. The seller of personal property appeals from the denial of its motion for summary judgment in a contest with the purchasers over proceeds of an insurance policy.

Litigation began when the insurer of the property, Phoenix of Hartford Insurance Company, filed in the Superior Court of Ware County its complaint for interpleader against the seller Timberjack Machines, Inc., and Dorothy Strickland, as administratrix of the estate of Ellis Strickland, the purchaser.

The complaint, in substance, alleged as follows: that the

plaintiff issued to Ellis Strickland a policy of insurance against loss by fire covering a 404 Timberjack machine with a loss payable clause to Timberjack Machines, Inc., as mortgagee as its interest should appear; that the machine suffered a fire loss; that Ellis Strickland has since died; that Timberjack Machines, Inc., and Dorothy Strickland, as administratrix of the estate of Ellis Strickland, each claimed the proceeds of insurance; and that it stood ready to pay the proceeds into the registry of the court.

To this complaint Eaton Yale & Towne, Inc., as successor to Timberjack Machines, Inc., filed its answer claiming the insurance proceeds under a conditional-sales contract covering the machine, which was executed by Timberjack Machines, Inc., as seller and Dorothy Strickland and Elwood Strickland as purchasers for the balance of the purchase price, and wherein the purchasers agreed to maintain insurance on the property with a provision "for losses, if any, to be payable to the Seller and to Purchaser as their interests may appear. . ."

Also to that complaint Dorothy Strickland, as administratrix of the estate of Ellis Strickland, filed an answer seeking to interplead herself individually and Elwood Strickland, claiming the proceeds for themselves and alleging, insofar as necessary to recite here, the facts which follow:

Upon the death of Ellis Strickland, his widow Dorothy Strickland and his son Elwood Strickland, after making certain financial arrangements not necessary to recite here, agreed verbally with Timberjack Machines, Inc., to purchase the property and to insure it against casualty loss for at least the amount of the unpaid balance due until a conditional-sales contract was executed after which Timberjack Machines, Inc., would carry casualty insurance to protect its unpaid balance without additional cost to the Stricklands.

Thereafter the agreement was reduced to writing by the parties, reciting, among other provisions, as follows:

"Further to our agreement, we [Timberjack Machines, Inc.] must request that you [Stricklands] furnish us with a

certificate of insurance, showing that these pieces of equipment are insured for the amount of the balance due us or more.

"Insofar as we are concerned, you will need not continue this insurance after we have placed the equipment on the regular Conditional Sales Contract. However, we advise that you insure your equity as our automatic insurance, for which we make no charge, will only cover the balance due us on the contract."

Pursuant to these contracts with Timberjack Machines, Inc., the Stricklands notified the general agent for the plaintiff insurance company to amend the policy involved here to show the Stricklands as owners instead of Ellis Strickland, and to continue the loss payable clause in favor of Timberjack Machines, Inc. until the conditional sales contract was executed. However, through mutual mistake of the agent and the Stricklands the policy was not amended as to such ownership and the loss payable clause was not specified to terminate when the conditional sales contract was executed.

In further pursuance of these contracts, the Stricklands executed the conditional sales contract with Timberjack Machines, Inc. It was on a printed form prepared and furnished by Timberjack Machines, Inc. and provided that the purchasers would insure the property against casualty loss with loss payable to the seller and purchasers as their interest appear, which was contrary to the written contract aforesaid. This was to have been deleted therefrom but, through mutual mistake of Timberjack Machines, Inc., and the Stricklands, it was not.

The Stricklands did not know that the policy in question had not been amended by the plaintiff insurance company as to ownership, or that the loss payable clause in favor of Timberjack Machines, Inc., had not been terminated when the conditional sales contract was executed, and they continued to carry it for their sole protection.

On a named date the property suffered a total casualty loss.

The real intent of the Stricklands and the insurance company was that the Stricklands be insured as owners against casualty loss to the property and that the loss payable clause in favor of Timberjack Machines, Inc. be terminated when the conditional sales contract was executed.

Also, the real intent of the Stricklands and Timberjack Machines, Inc., was that the latter would insure the property against casualty loss to the extent of the unpaid balance due it under the conditional sales contract at no additional cost to the Stricklands, who would insure their interest in the property at their own expense.

The Stricklands' answer prayed that the conditional sales contract be reformed to correct the mutual mistake thereto so as to speak the true intent of the parties, such reformation to delete the provisions that the Stricklands insure the property against casualty loss with loss payable to Timberjack Machines, Inc.; also to delete Ellis Strickland as owner and insured and substitute Dorothy Strickland and Elwood Strickland as owners and insured; and to delete and cancel the loss payable clause in favor of Timberjack Machines, Inc., as of the date of execution of the conditional sales contract. They also prayed that they be awarded the insurance proceeds.

Elwood Strickland testified on deposition that he signed the conditional sales contract, that a named employee of Timberjack Machines, Inc., brought it to his mother's home for them to sign and that he looked it over but did not understand it.

Dorothy Strickland testified on deposition that she signed the conditional sales contract, that this same employee brought it to her, that she did not read it, that he told her that it was drawn up "just like our agreement was" and that she requested the insurance agent to amend the policy.

Both of these deponents were made defendants; and Eaton Yale & Towne, Inc., was substituted as a defendant in the place of Timberjack Machines, Inc.

Eaton Yale & Towne, Inc., moved for summary judgment in its favor and against the defendants Dorothy Strickland,

individually and as administratrix of the estate of Ellis Strickland, and Elwood Strickland for the impleaded funds, with interest, less plaintiff's cost and attorney's fees, upon the ground that the record, including the pleadings and depositions on file, shows that there is no genuine issue as to any material fact and that the movant is entitled to such judgment as a matter of law.

The movant submitted the affidavit of Herbert E. Rudy for use in the motion for summary judgment. It will be referred to later.

This motion was denied. The trial court certified the judgment for immediate review.

1. The answer of the Stricklands, particularly its third defense and claim for interpleaded funds states a claim for relief. It is sufficient for reformation of the conditional sales contract and the insurance policy upon the ground of mutual mistake of the parties.

It is basic that equity will reform a contract for mutual mistake of the parties. *Code* §§ 37-207, 37-208.

2. The answer was in no way pierced by the movant.

(a) The depositions of the Stricklands taken by Eaton Yale & Towne, Inc., do not militate against their answer. The fact that they executed the conditional sales contract without reading it or understanding its contents as stated in their depositions is of no legal consequence.

As to this rule it is well established: "Although equity will not reform a written contract because of mistake as to the contents of the writing on the part of the complaining party, who is able to read but fails to do so, where no sufficient excuse appears as to why such party did not read the contract [citation], such principle has not been extended to cases in which it is sought to reform written instruments on the ground of mutual mistake of fact. 'In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto.' *Green v. Johnson*, 153 Ga. 738 (3, 4, 5), 749 (113 SE402). In such cases, it is wholly immaterial from what cause the

defective execution of the intent of the parties originated. *Wyche v. Greene,* 16 Ga. 49. Nor will the negligence of the party complaining defeat his right to reformation, if the other party has not been prejudiced thereby. *Code* § 37-212." *Sheldon v. Hargrose,* 213 Ga. 672, 674 (100 SE2d 898).

In the same connection it should be pointed out that one of the deponents testified that the salesman of Eaton Yale & Towne, Inc., stated that the conditional sales contract was drawn up "just like our agreement was." This court recently dealt with a comparable situation in *Birmingham Fire Ins. Co. v. Commercial Transportation, Inc.,* 224 Ga. 203, 207 (160 SE2d 898), where it was sought to charge negligence in not ascertaining the contents of a policy. There we reaffirmed what was said in *Niagara Fire Ins. Co. v. Jordan,* 134 Ga. 667, 671 (86 SE 611, 20 AC 363): "In the insurer's promise to deliver an accurate policy, according to his oral agreement with the insured, the insured has a just expectation that there will be no designed variance. A man should not be permitted for his pecuniary advantage to impute it to another as gross negligence that the other trusted to his fidelity to his promise."

(b) The affidavit of Herbert E. Rudy adds nothing to the attack upon the answer.

The caption recites "Affidavit of Herbert E. Rudy, Vice President, Eaton Yale & Towne, Inc." Yet nowhere in the body of the affidavit, where facts are sworn to, is there any mention of Rudy being vice president of this company or having any connection whatever with it. The body of the affidavit merely recites the practice of Timberjack Machines, Inc., and Eaton Yale & Towne, Inc., as to insurance coverage, use of a conditional sales form and their promulgation to company personnel.

It is apparent that the affidavit fails to comply with *Code Ann.* § 81A-156 (e) as to the requirement of personal knowledge.

In *Hancock v. Hancock,* 223 Ga. 481, 487 (156 SE2d 354) it was said: "Nowhere in the affidavit is it recited or shown

affirmatively that this statement was made on personal knowledge and that the affiant is competent to testify as to the matters stated in it, as required. . . From all that appears this statement is a mere conclusion, not as to a fact to which the plaintiff could testify." See also, *Chandler v. Gately,* 119 Ga. App. 513, 516 (167 SE2d 697).

Under these circumstances this affidavit does not provide any support for summary judgment.

3. In view of the foregoing it cannot be said that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Therefore denial of the motion was proper.

*Judgment affirmed. All the Justices concur, except Mobley, P. J., disqualified.*